# No. 22-1877

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔦𝔵𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

− v. −

MYKAEL BOOKER,

*Defendant-Appellant*
_____

On Appeal from the United States District Court
for the Western District of Michigan, Southern Division
Case No. 1:20-cr-00189-JMB-4

## APPELLANT'S PRINCIPAL BRIEF

Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
Tel: (828)773-2628

*Counsel for Defendant- Appellant, Mykael Booker*

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ................................................. 1

JURISDICTIONAL STATEMENT ..................................................... 2

CONSTITUTIONAL AND STATUTORY PROVISIONS ................. 3

QUESTIONS PRESENTED ............................................................ 4

STATEMENT OF THE CASE ......................................................... 5

    A.  Relevant Facts and Procedural History .................... 5

    B.  Intervening Change in Second Amendment Law ..... 9

STANDARD OF REVIEW ............................................................. 11

ARGUMENT ............................................................................... 12

    I.  The Second Amendment's plain text covers the conduct of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1). .............................................. 16

    II.  After *Bruen* and *Rahimi*, 18 U.S.C 922(g)(1) is only constitutional as applied to "dangerous" people ................ 17

    III. The statute is unconstitutional as applied to Mr. Booker. ................................................. 21

        A.  Mr. Booker is not a "dangerous" person ................. 22

        B.  The conduct at issue is not "inherently dangerous" ................................................. 23

        C.  The nature of the "infringement" is severe ............ 25

CONCLUSION ............................................................................ 26

CERTIFICATE OF COMPLIANCE ................................................... 27

CERTIFICATE OF SERVICE ......................................................... 28

## REQUEST FOR ORAL ARGUMENT

This appeal presents important constitutional questions concerning the continued validity of a conviction for the offense of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1), based on a guilty plea that was entered prior the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), and this Court's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024); the constitutionally permissible scope of penalties that may be imposed under that statute, for engaging in conduct that is otherwise lawful and constitutionally protected activity under the Second Amendment, in light of those decisions; and the availability of "as applied" relief to individuals raising these issues for the first time on direct appeal, based on the intervening change in law which these cases represent. Appellant respectfully submits that oral argument would materially assist the Court in addressing the interaction between those decisions, the historical limits on status-based disarmament, and the proper application of individualized dangerousness framework articulated in *Williams*.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231 because this case involved offenses against the laws of the United States. The district court entered its final judgment of conviction and sentence on September 16, 2022 [, and a timely notice of appeal was filed on September 29, 2022. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

# CONSTITUTIONAL AND STATUTORY PROVISIONS

## The Second Amendment

"A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II.


## 18 U.S.C. § 922(g)(1) ("Unlawful Acts")

It shall be unlawful for any person… who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess … any firearm or ammunition… which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922.


## 18 U.S.C. § 924(e)(1) ("Penalities")

[Any] person who violates section 922(g)… and has three previous convictions by any court… [f]or a serious drug offense… shall be … imprisoned not less than fifteen years…

18 U.S.C.A. § 924.

## QUESTIONS PRESENTED

1.      Whether 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Booker.

2.      Whether the 18 U.S.C. § 924(e)(1), which mandates the imposition of a 15-year mandatory minimum prison sentence for engaging in conduct that otherwise constitutes protected activity under the "plain text of the Second Amendment," *Bruen,* 17 U.S. at 17, has any appropriate historical analogue to historical firearm regulations, or is otherwise permissible as applied to any individual on the sole basis of prior unrelated offenses that while serious—do categorically not establish that he presents a danger to the public or others.

3.      Whether the appropriate remedy is vacatur of the conviction and on direct appeal, or remand to the district court for the purpose of making an individualized determination under the framework articulated in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024).

## STATEMENT OF THE CASE

### A. Relevant Facts and Procedural History

Appellant Mykael Lee Booker is presently serving a 15-year prison sentence for pleading guilty to the offense of "possessing ammunition" as a felon, in violation of 18 U.S.C. §§ 922(g)(1). *See* Tr. Plea Hr'g (Jul, 20, 2021), Dkt. 163, Page ID 722 (admitting that he "possessed eight rounds of .45 caliber ammunition," as alleged in the indictment, and that he had "at some point prior to that" been "convicted of a felony").[1]

The conviction stems from his participation in an alleged conspiracy (Count I) to posesses with intent to distribute controlled substances (Count II), 21 U.S.C. §§ 841, 846—which he also pleaded guilty to by stipulation at a later date, as part of a separate plea agreement that resolved a dispute over the type and quantity of

---

[1] Mr. Booker also pleaded guilty to possession and intent to distribute "500 grams or more of cocaine," 21 U.S.C. § 841, as charged in the original indictment [Dkt. 23, Page ID 122]—but then partially withdrew his plea due to a disagreement on the drug type and quantities at issue. That dispute was subsequently resolved by stipulation, pursuant to a separate plea agreement [Dkt. 209] in which he admitted to possessing with intent to distribute "approximately 7.6 grams of cocaine base (crack cocaine)." *See* Plea Agreement (March 24, 2022), Dkt. 261, Page ID 989.

drugs at issue. *See* Plea Agreement (March 24, 2022), Dkt. 261, Page

ID 989 (admitting that he possessed with intent to distribute

"approximately 7.6 grams" of crack cocaine).[2] His plea on the "felon-

in-posession" charge, U.S.C. §§ 922(g)(1) (Count III), was entered

well before that, however, in open court and without any agreement

on July 20, 2021 [Dkt. 163].

At sentencing, the district court judge acknowledged that Mr.

Booker appeared to be the least culpable defendant charged in the

conspiracy,[3] which would ordinarily factor into the length of any

prison sentence imposed pursuant to the advisory sentencing

guidelines. *See* Tr. Sentencing Hr'g (Sept. 16, 2022), Dkt. 295, Page

ID 2454. The district court also credited Mr. Booker for "accepting

---

[2] By comparison, the original indictment charged him with posession
and intent to distribute "500 grams or more of cocaine," 21 U.S.C. § 841,
which was a central point of controversy in the proceedings below [Dkt. 23,
Page ID 122].

[3] As this Court previously recognized in another defendant's appeal
stemming from the same concpiracy indictment, Mr. Booker was essentially
employed as a delivery driver who functioned as the "middle man" between
Dennis Cartwright and his Detroit-based drug supplier, Eliand Johnson. *See
United States v. Cartwright,* No. 23-1041, 2024 WL 4133821 (6th Cir. Sept.
10, 2024) (explaining that Mr. Booker's principal role in the conspiracy was
to deliver payments to Johnson in exchnage for drugs which he would
transport and deliver back to Cartwright in Grand Rapids, Michigan)

responsibility" by way of his guilty plea, which made him eligible for a two-level reduction under U.S.S.G. § 3E1.1(a), and which the government did not oppose. *Id.* at Page ID 2444. In the end, however, none of these factors mattered to the ultimate sentence imposed, because the district court lacked any discretion to depart from the applicable mandatory minimum sentence imposed by 18 U.S.C. § 924(e)(1) ("[Any] person who violates section 922(g)… and has three previous convictions by any court… [f]or a serious drug offense… shall be … imprisoned not less than fifteen years…")

As set forth in the pre-sentence report ("PSR"), Mr. Booker's criminal history included several prior state convictions that potentially qualified as predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Specifically, the PSR identified three separate drug offenses involving "delivery" or "manufacture" of cocaine (less than 50 grams), Mich. Comp. Laws § 333.7401(2)(a)(iv), and a second-degree home invasion offense, Mich. Comp. Laws § 750.110a(3), as potentially qualifying predicate offenses. *See* Final PSR [Dkt. 261, Page ID 1352-1355]. Nor did it

matter that all but one of these offenses had occurred well over a decade earlier, when Mr. Booker was between the age of 18 and 22. Based on the foregoing, the district court was required to apply the 15-year minumum sentence to Mr. Booker's conviction on Count III for being a "felon in posession" of ammunition, 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(e).

**B. Intervening Change in Second Amendment Law**

On June 23, 2022, well after Mr. Booker had pleaded guilty to the "felon-in-possession" charge and just a few weeks before his sentencing, the Supreme Court announced its decision in *New York State Rifle & Pistol Association v. Bruen,* 7 U.S. 1 (2022), which fundamentally altered the course of Second Amendment jurisprudence across the nation and in this Circuit. *Id.* at 17 (holding that the constitutionality of any law which burdens conduct protected by "the Second Amendment's plain text" depends on whether the regulation is "consistent with this Nation's historical tradition of firearm regulation," as demonstrated by looking to historical analogue restrictions deemed permissible in the founding era). As this Court would later recognize, the *Bruen* decision undermined decades of previously well-settled precedents concerning the constitutionality of 19 U.S.C. § 922(g)(1). *See United States v. Williams,* 113 F.4th 637, 643 (6th Cir. 2024) (observing that *Bruen* offers neither "assurances" as to the validity of "felon-in-possession laws," nor guidance on "any historical justifications for those laws.").

According to this Court's more recent post-*Bruen* precedents, laws that seek to disarm or penalize individuals for possessing firearms only pass muster "as applied to dangerous people," *Williams,* 113 F.4th 663:

> History shows that governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they aren't. Through § 922(g)(1), Congress has decided to enact a class-wide disarmament of felons. … [and] that statute is constitutional as it applies to dangerous individuals.

<u>United States v. Williams</u>, 113 F.4th 637, 662-663 (6th Cir. 2024).

Because *Bruen* was only decided after he pleaded guilty to the offense of being a felon-in-possession of a firearm—and because that decision was such a marked departure from prior precedents—Mr. Booker was deprived of any meaningful opportunity to question the constitutionality of the statute that served as the basis for his conviction, 18 U.S.C. § 922(g)(1), in the district court proceedings below.

Accordingly, Mr. Booker does so now, admittedly, for the first time on appeal, while deferring to this Court on whether it prefers to decide the matter in the first instance, or remand the case to the

district court with instructions to render a decision on the issue, in the first instance, applying this Court's intervening decision in *Williams,* 113 F.4th 637 (6th Cir. 2024).

## STANDARD OF REVIEW

This Court reviews the constitutionality of a federal statute *de novo. United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024). As-applied constitutional challenges likewise present legal questions reviewed *de novo*, though any underlying factual findings are reviewed for clear error. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016). And whether a statutorily imposed mandatory sentence violates the Constitution is also question of law, subject to *de novo* review. *See United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024).

The Government will surely argue that plain error review should apply because the question presented on appeal was not raised in the district below. In circumstances involving such a drastic change in applicable law as to the statute of conviction, based on Supreme Court cases decided in the period between a defendant's

entry of a guilty plea and the point at which his conviction is subject to appellate review, *de novo* review is warranted to prevent manifest injustice.

Even under plain error review, however, this Court has a duty to correct any error that is "plain" at the time of appellate consideration, irrespective of whether it would have constituted error under controlling law at the time when the matter was pending before the district court, *See, e.g., United States v. Gibbs,* 626 F.3d 344, 355 (6th Cir. 2010) (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005))

## ARGUMENT

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II; *accord New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 8–9 (2022) ("the Second… Amendment protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense.").

The statutory provision under which Mr. Booker pleaded guilty to being a "felon-in-possession of ammunition," stands in stark contrast to that declaration by making it unlawful for anyone who has ever convicted of "a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition," 18 U.S.C. 922(g)(1).

Last year, the Supreme Court's authored a decision which sought to clarify the test for assessing the constitutionality of such provisions in light of *Bruen*'s bold pronouncement that any such restriction was presumptively unconsititonal. *See United States v. Rahimi*, 144 S. Ct. 1889 (June 21, 2024). *Rahimi* considered a Second Amendment challenge to the constitituionality of another provision in the same statute, which bars individuals subject to a domestic violence restraining order from possessing a firearm, 18 U.S.C. 922(g)(8), and elaborated on the reasons why that that particular provision easily passed muster. *See Rahimi,* 602 U.S. at 700 ("[W]e have no trouble concluding that Section 922(g)(8) survives … [based on] [o]ur tradition of firearm regulation allow[ing] the Government

to disarm individuals who present a credible threat to the physical safety of others.").

Despite this attempt at clarification, a Circuit split on the consitutitonality of 18 U.S.C. § 922(g)(1) has emerged in the wake of *Rahimi* and is still very much in development. Based on *Rahimi,* we now know that other federal gun restrictions in the domestic violence provision survives scrutiny as applied to domestic violence offenders whom a court has deemed "present a credible threat to the physical safety of others," as necessary to satisfy the threshold inquiry for a restraining order. Meanwhile, however, the constitutionality of other provisions within that statute, remains an open question, both facially and as applied to particular individuals.

As-of the date of this writing, several Circuits, including this one, have rejected facial challlenges to 18 U.S.C. § 922, while recognizing that the statute is likely unconsititonal as applied to some individuals, or categories of individuals. *See, e.g., United States v. Williams,* 113 F.4th 637 (6th Cir. Aug. 23, 2024); *United States v. Harris*, 144 F.4th 154 (3d Cir. 2025); *United States v. Diaz,* 116 F.4th

458, 462 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 2822 (2025); *see also*

*United States v. Harrison*, 153 F.4th 998 (10th Cir. 2025) (declining

to "decide the ultimate constitutional question," but remaning case to

disrict court for a fact-based determination on the as applied

challenge concerning whether marijuana users pose a sufficient "risk

of future danger," as would be necessary to satisfy the *Rahimi* test).

Meanwhile, the Supreme Court has granted certiorari and has more

than a dozen additional petitions presently pending on this very

issue. *See United States v. Hemani,* No. 24-1234 (cert granted, Oct.

20, 2025) (concerning "[w]hether 18 U.S.C. 922(g)(3)… [which

prohibits the possession of firearms by … 'an unlawful [drug] user'

… violates the Second Amendment, as applied to respondent.").

**I.** **The Second Amendment's plain text covers the conduct of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1).**

In *United States v. Williams,* 113 F.4th 637 (6th Cir. 2024), this Court characterized the *Bruen-Rahimi* framework as requiring a two-step inquiry, which starts by asking "whether 'the Second Amendment's plain text' covers [the] conduct" at issue. *Williams,* 113 F.4th at 648 ("[The] first step… assess[es] whether the challenger's conduct falls within the Second Amendment's plain text.").

The Court need not engage in that analysis here, however, because it has already answered that question in the affirmative. *See Williams,* 113 F.4th at 649–50 (recognizing that the felon-in-possession provision at § 922(g)(1) concerns "conduct" which "the Second Amendment's plain text presumptively… protects."); *accord United States v. Gailes,* 118 F.4th 822, 826 (6th Cir. 2024) ("Felons, we have held, are a part of 'the people' covered by the Second Amendment."); *U.S. v. Suggs,* No. 24-2059, 2025 WL 2978046, at *1-2 (6th Cir. Oct. 22, 2025) ("[F]elons are among 'the people' [which]… the Second Amendment protects"); *United States v. Gore*, 118 F.4th

808, 813-15 (6th Cir. 2024) (finding that individuals under indictment for a felony are also amonst those people).

Here, as in *Williams,* Mr. Booker "is a member of the people claiming 'the right' to possess a gun … [i.e.,] to 'keep and bear arms," and "Section 922(g)(1) burdens that right." *Williams,* 113 F.4th at 649–50 (citing *Heller*, 554 U.S. at 582; *Rahimi*, 144 S. Ct. at 1898); *accord Gailes,* 118 F.4th at 826.

## II.    After *Bruen* and *Rahimi*, 18 U.S.C 922(g)(1) is only constitutional as applied to "dangerous" people

Applying *Bruen* and its progeny, the *Williams* decision reasoned that laws which seek to disarm and/or impose criminal penalties on "dangerous" people are  nonetheless consistent with the "history and tradition" of firearm regulations in this nation:

> To summarize, we hold today that § 922(g)(1) is constitutional … as applied to dangerous people. Our nation's historical tradition confirms …-that [Congress] may disarm groups of people, like felons, whom [it] believes to be dangerous—*so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous.*

*United States v. Williams,* 113 F.4th 637, 663 (6th Cir. 2024).

Put another way, *Williams* preserves the availability of as applied relief to individuals facing prosecution for violations of the statute, absent facts evincing any real danger or threat of danger to others due to the mere possession of a firearm or ammunition.

Accordingly, the second stage of the inquiry focuses on whether an individual covered by the statute is, in fact, dangerous, which must be determined on a case-by-case basis. *Id.* at 657–60, 663; *id.* at 657 (positing that district courts are especially well-qualified to make this determination and adjudicate as applied challenges to particular applications of to § 922(g)(1) in the first instance).

Crucially, the *Rahimi* decision implicitly rejects the "categorical approach," which has been used to define "crimes of violence" and other predicate offenses  in other contexts, at this stage.      After all, if the Supreme Court had wanted to adopt the categorical approach to predicate offenses in *Rahimi*, it surely could have done so.

The fact that it did not suggests that circumstances which might warrant finding that someone is a "dangerous" person for the

purpose of § 922(g) is a fundamentally different task from simply determining whether a predicate offense qualifies as a "crime of violence" under the categorical approach.

Simply put, *Rahimi* suggests that whether a defendant may be disarmed under the 18 U.S.C. § 922 without running afoul of the Second Amendment is not a question which can simpy be resolved by mechanically classifying prior convictions as violent or non-violent.

The *Williams* decision articulates these principles flawlessly, but arguably fails to apply them in its individualized inquiry as to the defenfant in that case. *See* 113 F.4th at 661–63 (adopting a categorical approach type stance to conclude that Williams prior offenses were inherently dangerous). Even so, it's ultimate conclusion was entirely fair based on the specific nature of those offenses. *Id.* (observing that Williams' prior convictions included "attempted murder" and more than one instance of "aggravated robbery," which categorically involves the threatened use of force).

This Court's subsequent decision in *United States v. Black,* No. 23-1622, 2025 WL 1356614 (6th Cir. May 9, 2025) arguably provides a better model of what a "fact-specific" individualized inquiry should look like. In *Black,* the Court's individualized assesment was based, at least in part, on findings related to the underlying offense conduct which revealed the defendant's predisposition towards physical altarcations. *Id.* at *2 (observing that Black had "punched" one victim in the face, and "jumped" another on two spearate and unrelated occasion, to support its conclusion that this defendant would, in fact, ostensibly present a real threat of danger to others, if armed.").

Of course, the Supreme Court's decision in *Rahimi,* which describes the circumstances leading to the domestic violence restraining order on the defendant in that case, in painstaking detail provides an even better model of the types of individuals who clearly belong in the "danger" zone. *See United States v. Rahimi,* 602 U.S. 680, 686 (2024) (recounting an incident in which the defendant "assaulted the mother of his young child" in a parking lot and then

fired shots in her direction as she fled, "although it is unclear whether he was aiming at her or the witness."); *id.* at 687 (describing subsequent instances in which Rahimi assaulted or threatened other people, violated the court-imposed restraining order).

That said, there are presumably some circumstances in which it is readilt apparent that thorough analysis is unecessary, such as in the case of serious recidivists with with no discernible interest or attempts towards rehabilitation. *See, e.g. United States v. Bradley,* No. 23-5440, 2025 WL 2658388, at *1 (6th Cir. Apr. 17, 2025), cert. denied, No. 25-5654, 2025 WL 2949657 (U.S. Oct. 20, 2025) (observing that the defendant "had committed a total of 26 prior aggravated burglaries"). *United States v. Bradley*, No. 23-5440, 2025 WL 2658388, at *1 (6th Cir. Apr. 17, 2025), *cert. denied,* No. 25-5654, 2025 WL 2949657 (U.S. Oct. 20, 2025)

## III. The statute is unconstitutional as applied to Mr. Booker.

Measured against this framework, neither Mr. Booker himself, nor the conduct at issue in this case satisfies standard for the types of circumstances in which any particular application of 18 U.S.C 922(g)

can withstand constitutional scrutiny under the standards set forth in *Bruen* post-Rahimi

## A. Mr. Booker is not a "dangerous" person

As an initial matter, Mr. Booker is not a "dangerous" person as compared to individuals like the defendant in *Rahimi, Williams,* and *Black.*

Mr. Booker's criminal history, as outlined in the PSR [Dkt. 261], mostly reflects prior convictions for non-violent drug offenses and various driving infractions. The offenses outlined there do not suggest he has ever injured another person, either in the course of committing a crime, or otherwise—and do not tend to indicate that Mr. Booker had any kind of propensity for violence.

Indeed, the most serious offense in his record is arguably a conviction for home invasion at age 22, which stems from an incident that seems to have involved breaking and entering into a private residence, but did not involve any confrontation, violence, or threat to another person that can be discerned from the record. Aside from that, the only other convictions which the court deemed "serious"

enough to qualify as predicate offenses under the ACCA are the three aforementioned convictions for cocaine-related offenses

Based on the foregong Mr. Booker's criminal history, while serious, does not place him within the ambit of other offenders whom this Court has deemed to be "dangerous" people. Unlike the defendants in *Williams*, and *Black*, Mr. Booker has no convictions for crimes such as murder, attempted murder, robbery, assault, or repeated weapons offenses—crimes that speak directly to whether an individual is dangerous. *Williams,* 113 F.4th at 658.

To be sure, Mr. Booker has prior drug-related convictions and a home-invasion conviction. But those offenses are temporally remote, resulted in relatively modest sentences, and—critically— were not accompanied by findings of firearm use, physical injury, or violent conduct. This case therefore differs markedly from those in which this Court has upheld § 922(g)(1) as applied to individuals with extensive criminal records for violent offenses.

## B. The conduct at issue is not "inherently dangerous"

The conduct underlying his conviction also doesn't qualify as inherently dangerous. After all, merely possessing bullets or other

ammunition is not uncommon, and certainly not a crime in and of itself. To the contrary, it is protected Second Amendment activity and rather unexceptional in many American households.

Had he possessed a "machine gun" or something significantly more dangerous than a few boxes of bullets, then perhaps the analysis would be different. *See United States v. Brown,* 147 F.4th 687 (6th Cir. 2025).

Here, however, the trasncript from his plea before the magistrate judge unamibigously confirms that the sole basis for his plea and conviction was simply possessing "eight rounds of .45 caliber ammunition," whilst having been previously convicted of the various offenses described in the previous section and the PSR. *See* Tr. Plea Hr'g (Jul, 20, 2021), Dkt. 163, Page ID 722 (admitting that he "possessed eight rounds of .45 caliber ammunition," as alleged in the indictment, and that he had previously been convicted of a felony, "at some point prior to that"). In these circumstances, any reasonable jurist would be hardpressed to find common threads between the conduct at issue here and that of any other case in which

a conviction for being a felon-in-posession of ammuition has been sustained as applied to a particular defendant, post-*Rahimi*.

In sum, the convcition rests entirely upon Mr. Booker's status as a felon—as opposed to any demonstrated propensity for violence or other indication that his possession of bullets presented a danger to any other person. Under *Williams*, that is not enough.

### C. The nature of the "infringement" is severe

Last but not least, the gravity of the "infringement" bears worth mentioning here, considering the severity of penalty faced by Mr. Booker and similarly situated individuals serving lengthy mandatory mimunm prison sentences pursuant to 18 U.S.C. § 924(e)(1), as a result of convictions which are presumptively unlawful in light of *Bruen*.

To the extent that *Bruen* and *Rahimi* cast doubt on the constitutionality of 18 U.S.C § 922(g) as applied to some individuals or categories of individuals, the only logical conclusion is that the subsequent provision delineating the "penalties" for that offense, 18 U.S.C. § 924(e)(1), should be subjected to the same Second Amendment analysis and scrutiny. Since neither the Government

nor any applicable precedents have sought to idenitfy appropriate historical analogues for that provision, it also stands to reason that 18 U.S.C. § 924(e)(1) is unconstitutional, both on its face and as applied to Mr. Booker.

## <u>CONCLUSION</u>

For these reasons, the judgment of conviction must be vacated, and the case should be remanded with instructions for the district court to resentence. Or in the alternative, the case could be remanded in its entirety to the district court with instructions to adjudicate Mr. Booker's as applied challenge in the first instance, in light of *Williams,* 113 F.4th at 658.

Respectfully submitted,

By:    /s/ *Agatha M. Cole*
        Agatha M. Cole
        BEVERLY PLLC
        43 West 43rd Street, Suite 159
        New York, NY 10036
        (828) 773-2628
        agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the typeface and the type-style requirements of Fed. R. App. P. 32, because it has been prepared in Century Schoolbook (font size 14) and does not exceed 30-pages in length.

By:     /s/ *Agatha M. Cole*
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*

## CERTIFICATE OF SERVICE

The foregoing brief was served on counsel for all parties via the court's electronic filing system.

By:     /s/ *Agatha M. Cole*
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*