# No. 22-1877

IN THE

# United States Court of Appeals for the Sixth Circuit

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

— v. —

MYKAEL BOOKER,

*Defendant-Appellant*
_____

On Appeal from the United States District Court
for the Western District of Michigan, Southern Division
Case No. 1:20-cr-00189-JMB-4

## APPELLANT'S PRINCIPAL BRIEF

Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
Tel: (828)773-2628

*Counsel for Defendant- Appellant, Mykael Booker*

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT .................................................. 1

JURISDICTIONAL STATEMENT ................................................... 2

CONSTITUTIONAL AND STATUTORY PROVISIONS ................. 3

QUESTIONS PRESENTED ............................................................. 4

STATEMENT OF THE CASE .......................................................... 5

    A.  Relevant Facts and Procedural History ................... 5

    B.  Intervening Change in Second Amendment Law ..... 8

STANDARD OF REVIEW .............................................................. 10

ARGUMENT ................................................................................. 11

I.   The Second Amendment's plain text covers the conduct of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1). ................................................. 15

II.  After *Bruen* and *Rahimi*, 18 U.S.C. 922(g)(1) is only constitutional as applied to "dangerous" people .......... 16

III. The statute is unconstitutional as applied to Mr. Booker. ...................................................... 20

    A.  Mr. Booker is not inherently dangerous ................. 20

    B.  The conduct at issue is not inherently dangerous .. 23

    C.  The nature of the infringement is severe ................ 24

CONCLUSION .............................................................................. 25

CERTIFICATE OF COMPLIANCE ................................................... 26

CERTIFICATE OF SERVICE ......................................................... 27


ADDENDUM - List of Relevant Docket Entries ............................ 28

# TABLE OF AUTHORITIES

Cases

*Johnson v. United States,*
520 U.S. 461 (1997) ........................................................................ 11

*New York State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022) ................................................................... *passim*

*United States v. Barnett,*
398 F.3d 516 (6th Cir. 2005) ......................................................... 11

*United States v. Black,*
No. 23-1622, 2025 WL 1356614 (6th Cir. 2025) ......................19, 22

*United States v. Bradley,*
No. 23-5440, 2025 WL 2658388 (6th Cir. 2025)
*cert. denied,* No. 25-5654 (U.S. Oct. 20, 2025) …............................ 18

*United States v. Cartwright,*
No. 23-1041, 2024 WL 4133821 (6th Cir. 2024) ............................ 5

*United States v. Diaz,*
116 F.4th 458 (5th Cir. 2024) ....................................................... 13

*United States v. Gailes,*
118 F.4th 822 (6th Cir. 2024) ............................................ 10, 15, 16

*United States v. Gibbs,*
626 F.3d 344 (6th Cir. 2010) ........................................................ 11

*United States v. Gore,*
118 F.4th 808 (6th Cir. 2024) ....................................................... 15

*United States v. Harris,*
144 F.4th 154 (3d Cir. 2025) ........................................................ 13

*United States v. Harrison,*
   153 F.4th 998 (10th Cir. 2025) ...................................................... 13

*United States v. Hemani,*
   No. 24-40137, 2025 WL 354982 (5th Cir. Jan. 31, 2025),
   *cert. granted*, No. 24-1234 (U.S. Oct. 20, 2025) ............................. 14

*United States v. Morton,*
   123 F.4th 492 (6th Cir. 2024) ........................................................ 10

*United States v. Pacheco,*
   841 F.3d 384 (6th Cir. 2016) ......................................................... 11

*United States v. Rahimi,*
   602 U.S. 680 (2024) ............................................................... *passim*

*United States v. Suggs,*
   No. 24-2059, 2025 WL 2978046 (6th Cir. 2025) .......................... 15

*United States v. Williams,*
   113 F.4th 637 (6th Cir. 2024) ................................................ *passim*

Constitutional and Statutory Provisions

U.S. Const. amend. II ............................................................. *passim*
18 U.S.C. § 922(g) .................................................................. *passim*
18 U.S.C. § 924 ……............................................................... 3, 5, 21, 25
18 U.S.C. § 3231 .................................................................... 2
18 U.S.C. § 3742 .................................................................... 2
21 U.S.C. § 841 ...................................................................... 5
21 U.S.C. § 846 ...................................................................... 5
Mich. Comp. Laws § 333.7401 ............................................. 5
Mich. Comp. Laws § 750.110 ……......................................... 5

Other Authorities

U.S.S.G. § 3E1.1……............................................................... 6

## REQUEST FOR ORAL ARGUMENT

This appeal presents important constitutional questions concerning: (1) the continued validity of a conviction for the offense of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1), based on a guilty plea that was entered prior the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), and this Court's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024); (2) the constitutionally permissible scope of penalties that may be imposed under that statute, for engaging in conduct that is otherwise lawful and constitutionally protected activity under the Second Amendment, in light of those decisions; and (3) the availability of "as applied" relief to individuals raising these issues for the first time on direct appeal, based on the intervening change in law which these cases represent.

Appellant respectfully submits that oral argument would materially assist the Court in addressing the interaction between those decisions, the historical limits on status-based disarmament, and the proper application of the individualized "dangerousness"

inquiry that is required to assess the constitutionality of convictions under 18 U.S.C. § 922 in this Circuit.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231 because this case involved offenses against the laws of the United States. A final judgment of conviction and sentence was entered on September 16, 2022 [Dkt. 292], and a timely notice of appeal was filed on September 29, 2022 [Dkt. 300]. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

# CONSTITUTIONAL AND STATUTORY PROVISIONS

## The Second Amendment

"A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II.

## 18 U.S.C. § 922 ("Unlawful Acts")

It shall be unlawful for any person… who has [previously] been convicted [of]… [any] crime punishable by imprisonment for a term exceeding one year… to… possess … any firearm or ammunition.

18 U.S.C. § 922(g)(1).

## 18 U.S.C. § 924 ("Penalties")

[Any] person who violates section 922(g)… and has three previous convictions by any court…  for a violent felony or a serious drug offense, or both … shall be … imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1).

1.     Whether 18 U.S.C. § 922(g)(1), which makes it unlawful for any person with a prior felony conviction to possess either a firearm or ammunition, is unconstitutional as applied to Mr. Booker.

2.     Whether 18 U.S.C. § 924(e)(1), which mandates the imposition of a 15-year mandatory minimum prison sentence for engaging in activity that is protected by the "plain text of the Second Amendment," *Bruen,* 17 U.S. at 17, has any appropriate analogues to historical firearm regulations, or is otherwise constitutionally permissible, as applied to an individual with prior unrelated convictions for felony offenses that, while serious—do not establish that his mere possession of ammunition presents an inherent danger to the public.

3.     Whether the appropriate remedy is vacatur of the conviction on direct appeal, or remand to the district court for the purpose of making an individualized determination under the framework articulated in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024).

4

## STATEMENT OF THE CASE

### A. Relevant Facts and Procedural History

Appellant Mykael Lee Booker is presently serving a 15-year prison sentence for pleading guilty to the offense of "possessing ammunition" as a felon, in violation of 18 U.S.C. § 922(g)(1). *See* Tr. Plea Hr'g (Jul. 20, 2021), Dkt. 163, Page ID 722 (admitting that he "possessed eight rounds of .45 caliber ammunition," as alleged in the indictment, and that he had "at some point prior to that" been "convicted of a felony").

The conviction stems from Mr. Booker's participation in a conspiracy (Count I) to distribute controlled substances (Count II), 21 U.S.C. §§ 841, 846—which he subsequently pleaded guilty to by stipulation at a later date, as part of a separate plea agreement that resolved a dispute over the type and quantity of drugs at issue. *See* Plea Agreement (Mar. 24, 2022), Dkt. 209, Page ID 989 (admitting that he possessed with intent to distribute "approximately 7.6 grams" of crack cocaine).[1] Mr. Booker's plea on the "felon-in-

---

[1] By comparison, the original indictment charged posession and intent to distribute "500 grams or more of cocaine," 21 U.S.C. § 841 [Dkt. 23, Page ID 22], which was a central point of controversy in the proceedings below.

possession" charge, U.S.C. § 922(g)(1) (Count III), was entered well before that, however, in open court and without any agreement, on July 20, 2021. *See* Plea Hr'g [Dkt. 163 at Page ID 722].

At sentencing, the district court judge acknowledged that Mr. Booker appeared to be the least culpable defendant charged in the drug conspiracy,[2] which would ordinarily factor into the length of any prison sentence imposed pursuant to the advisory sentencing guidelines. *See* Tr. Sentencing Hr'g (Sept. 16, 2022), Dkt. 295, Page ID 2454. The district court also credited Mr. Booker for "accepting responsibility" by way of his guilty plea, which made him eligible for a two-level reduction under U.S.S.G. § 3E1.1(a), and which the government did not oppose. *Id.* at Page ID 2444.

In the end, however, none of these factors mattered to the ultimate sentence imposed, because the district court lacked any

---

[2] As this Court previously recognized in another defendant's appeal stemming from the same concpiracy indictment, Mr. Booker was essentially employed as a delivery driver who functioned as the "middle man" between Dennis Cartwright and his Detroit-based drug supplier, Eliand Johnson. *See United States v. Cartwright*, No. 23-1041, 2024 WL 4133821 (6th Cir. Sept. 10, 2024) (explaining that Mr. Booker's principal role in the conspiracy was to deliver payments to Johnson in exchange for drugs which he would transport and deliver back to Cartwright in Grand Rapids, Michigan)

discretion to depart from the applicable mandatory minimum sentence imposed by 18 U.S.C. § 924(e)(1) ("[Any] person who violates section 922(g)... and has three previous convictions by any court... [f]or a serious drug offense... shall be ... imprisoned not less than fifteen years...").

As set forth in the pre-sentence report ("PSR"), Mr. Booker's criminal history included several prior state convictions that potentially qualified as predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Specifically, the PSR identified three separate drug offenses involving the "delivery" or "manufacture" of cocaine (less than 50 grams), Mich. Comp. Laws § 333.7401(2)(a)(iv), and a second-degree home invasion offense, Mich. Comp. Laws § 750.110a(3), as potentially qualifying predicate offenses. *See* Final PSR [Dkt. 261, Page ID 1352-1355].

Nor did it matter that all but one of these offenses had occurred well over a decade earlier, when Mr. Booker was between the age of 18 and 22. Based on the foregoing, the district court was required to apply the 15-year minumum sentence to Mr. Booker's conviction on

Count III for being a "felon in possession" of ammunition, 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(e).

### B. Intervening Change in Second Amendment Law

On June 23, 2022, well after Mr. Booker had pleaded guilty to the "felon-in-possession" charge and just a few weeks before his sentencing, the Supreme Court announced its decision in *New York State Rifle & Pistol Association v. Bruen,* 7 U.S. 1 (2022), which fundamentally altered the course of Second Amendment jurisprudence across the nation and in this Circuit. *Id.* at 17 (holding that the constitutionality of any law which burdens conduct protected by "the Second Amendment's plain text" depends on whether the regulation is "consistent with this Nation's historical tradition of firearm regulation," as demonstrated by looking to historical analogue restrictions deemed permissible in the founding era).

As this Court would later recognize, *Bruen* unsettled previously well-established precedents concerning the constitutionality of 19 U.S.C. § 922(g)(1). *See United States v.*

*Williams,* 113 F.4th 637, 643 (6th Cir. 2024) (observing that *Bruen* offers neither "assurances" as to the validity of "felon-in-possession laws," nor guidance on "any historical justifications for those laws.").

According to this Court's post-*Bruen* precedents, laws that seek to disarm or penalize individuals for possessing firearms only pass muster "as applied to dangerous people…"

> History shows that governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they aren't. Through § 922(g)(1), Congress has decided to enact a class-wide disarmament of felons. … [and] that statute is constitutional as it applies to dangerous individuals.

*United States v. Williams*, 113 F.4th 637, 662-663 (6th Cir. 2024).

Because *Bruen* was only decided after Mr. Booker had already pleaded guilty to the offense of being a felon-in-possession of ammunition—and because that decision was such a marked departure from prior precedents—Mr. Booker was deprived of any meaningful opportunity to question the constitutionality of the statute that served as the basis for his conviction, 18 U.S.C. § 922(g)(1), in the district court proceedings below. Accordingly, Mr. Booker does so now—admittedly, for the first time—on direct appeal.

## STANDARD OF REVIEW

This Court reviews the constitutionality of a federal statute *de novo*. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024).

As-applied constitutional challenges likewise present legal questions which are reviewed *de novo*, though any underlying factual findings are reviewed for clear error. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016).

Whether a statutorily imposed mandatory sentence violates the Constitution is also question of law, subject to *de novo* review. *See United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024).

The Government will surely argue that plain error review should apply because the question presented on appeal was not raised in the district below. In circumstances involving such a drastic change in applicable law concerning the constitutional validity of a conviction, based on Supreme Court cases decided during the period between the entry of a guilty plea and the point at which that conviction is subject to appellate review, *de novo* review is warranted to prevent manifest injustice.

Moreover, even under plain error review, this Court has a duty to correct any error that is "plain" at the time of appellate consideration, irrespective of whether it would have constituted error under controlling law at the time when the matter was pending before the district court, *See, e.g., United States v. Gibbs,* 626 F.3d 344, 355 (6th Cir. 2010) (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005)).

## ARGUMENT

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II; *accord United States v. Rahimi*, 602 U.S. 680, 690 (2024) ("The right secures for Americans a means of self-defense.") (citing *Bruen*, 597 U.S., at 17).

The statutory provision under which Mr. Booker pleaded guilty to being a "felon-in-possession of ammunition," stands in stark contrast to that bold declaration. *See* 18 U.S.C. § 922(g)(1) (designating the possession of "any firearm or ammunition," by any

person who has ever previously been convicted of a felony offense, as an independent federal crime).

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court sought to clarify the test for assessing the constitutionality of such provisions in light of *Bruen*. *See Rahimi*, 602 U.S. at 698 ("When an individual poses a clear threat of physical violence to another, the threatening individual may [still] be disarmed."). According to that test, persons subject to domestic violence restraining orders—which are necessarily premised on a court's finding that the individual in question "present[s] a credible threat" of danger to others, may be disarmed without running afoul of the Second Amendment. *See Rahimi,* 602 U.S. at 700 ("Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.") (rejecting a facial challenge to 18 U.S.C. § 922(g)(8), which bars individuals subject to domestic violence restraining orders from possessing firearms).

Despite this attempt at clarification, a Circuit split has emerged on the constitutionality of 18 U.S.C. § 922(g)(1) and is still very much in development.

Based on *Rahimi,* 602 U.S. at 700-701, we now know that 18 U.S.C. § 922(g)(8) "is constitutional as applied to" certain domestic violence offenders. Meanwhile, however, the constitutionality of other provisions within that statute remains an open question—both facially and as applied to particular individuals.

As of the date of this writing, several Circuits, including this one, have rejected facial challlenges to the statute, while recognizing that certain provisions of the statute are likely unconstitutional, as applied to some individuals or categories of individuals. *See, e.g., United States v. Williams,* 113 F.4th 637 (6th Cir. Aug. 23, 2024); *United States v. Harris*, 144 F.4th 154 (3d Cir. 2025); *United States v. Diaz,* 116 F.4th 458, 462 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 2822 (2025); *see also United States v. Harrison*, 153 F.4th 998 (10th Cir. 2025) (declining to "decide the ultimate constitutional question," but remanding case to district court for a fact-based determination

on the as applied challenge concerning whether marijuana users pose a sufficient "risk of future danger," as would be necessary to satisfy the *Rahimi* test).

Meanwhile, more than a dozen petitions are presently pending before the Supreme Court on the constitutionality of 18 U.S.C. § 922(g) in its various applications, while another has been granted and is currently pending for argument. *See United States v. Hemani,* No. 24-40137, 2025 WL 354982 (5th Cir. Jan. 31, 2025), *cert. granted*, No. 24-1234 (U.S. Oct. 20, 2025) (the question presented on which cert has been granted in *Hemani* is "[w]hether 18 U.S.C. § 922(g)(3)… which prohibits the possession of firearms by … unlawful [drug users] … violates the Second Amendment.").

## I. The Second Amendment's plain text covers the conduct of being a "felon-in-possession of ammunition," 18 U.S.C. § 922(g)(1).

In *United States v. Williams,* 113 F.4th 637 (6th Cir. 2024), this Court characterized *Bruen-Rahimi* framework as requiring a two-step inquiry, which starts by asking "whether 'the Second Amendment's plain text' covers [the] conduct" at issue. *Williams,* 113 F.4th at 648 ("[The] first step… assess[es] whether the challenger's conduct falls within the Second Amendment's plain text.").

The Court need not engage in that analysis here, however, because *Williams* has already and unambiguously answered that question in the affirmative. *Id.* at 649–50 (recognizing that the felon-in-possession provision at § 922(g)(1) concerns "conduct" which "the Second Amendment's plain text presumptively… protects."); *accord United States v. Gailes,* 118 F.4th 822, 826 (6th Cir. 2024) ("Felons, we have held, are a part of 'the people' covered by the Second Amendment."); *United States v. Suggs,* No. 24-2059, 2025 WL 2978046, at *1-2 (6th Cir. Oct. 22, 2025) ("[F]elons are among 'the people' [which]… the Second Amendment protects"); *see also United States v. Gore*, 118 F.4th 808, 813-15 (6th Cir. 2024) (finding that

individuals under indictment for a felony are also amonst those people).

Here, as in *Williams,* Mr. Booker "is a member of the people claiming 'the right' to possess a gun … [*i.e.,*] to 'keep and bear arms,'" irrespective of his status as a felon—and "Section 922(g)(1) burdens that right." *Williams,* 113 F.4th at 649–50 (citing *Heller*, 554 U.S. at 582; *Rahimi*, 144 S. Ct. at 1898); *accord Gailes,* 118 F.4th at 826.

## II.     After *Bruen* and *Rahimi*, 18 U.S.C. § 922(g) is only constitutional as applied to "dangerous" people.

Applying *Bruen* and its progeny, *Williams* holds that laws which seek to disarm and/or impose criminal penalties on "dangerous" people are  nonetheless consistent with the "history and tradition" of firearm regulations in this nation:

> To summarize, we hold today that § 922(g)(1) is constitutional … as applied to dangerous people. Our nation's historical tradition confirms … that [Congress] may disarm groups of people, like felons, whom [it] believes to be dangerous—***so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous.***

*United States v. Williams,* 113 F.4th 637, 663 (6th Cir. 2024).

16

Put another way, *Williams* preserves the availability of as applied relief to individuals facing criminal prosecution under 18 U.S.C. § 922(g), in the absence facts evincing that such individual's mere possession of a firearm or ammunition presents a real danger or threat of danger to others.

Accordingly, the second stage of the inquiry focuses on whether an individual covered by the statute is, in fact, dangerous, which must be determined on a case-by-case basis. *Id.* at 657–60, 663; *id.* at 657 (positing that district courts are especially well-qualified to make this determination and should therefore adjudicate "as applied" challenges to particular applications of § 922(g)(1) in the first instance).

Crucially, however, *Rahimi* implicitly rejects the "categorical approach" that has been used in other contexts. After all, if the Supreme Court had wanted to adopt the categorical approach in *Rahimi*, it surely could have done so. The fact that it did not suggests that whether an individual's Second Amendment rights can be revoked is a fundamentally different question from whether his

criminal record includes any predicate offense that qualify as "crimes of violence" under the categorical approach. Simply put, whether a defendant may be permanently disarmed under 18 U.S.C. § 922(g), is not easily resolved by mechanically classifying prior convictions as violent or non-violent.

In some circumstances, of course, a defendant's criminal history is wholly sufficient to discern that an individual is dangerous or would present an inherent danger to the public, if armed. *See, e.g. United States v. Bradley,* No. 23-5440, 2025 WL 2658388, at *1 (6th Cir. Apr. 17, 2025), *cert. denied,* No. 25-5654, 2025 WL 2949657 (Oct. 20, 2025) (upholding the application of under 18 U.S.C. § 922(g)(1) as to a defendant who "had committed a total of 26 prior aggravated burglaries"). In *Williams,* for example, the defendant's prior offenses were so obviously violent and egregious that nothing beyond a cursory review of his criminal record was necessary. *See Williams*, 113 F.4th at 661–63 (observing that the defendant's prior convictions included "attempted murder" and more than one instance of "aggravated robbery" involving the threatened use of force).

This Court's subsequent decision in *United States v. Black,* No. 23-1622, 2025 WL 1356614 (6th Cir. May 9, 2025) arguably provides a better model of what that "fact-specific" individualized inquiry should look like, however. In *Black,* the Court's individualized assessment was based, at least in part, on findings related to the defendant's underlying offense conduct which revealed a predisposition towards violent physical altercations. *Id.* at *2 (noting that Black had "punched" one victim in the face, and "jumped" another on two spearate and unrelated occasion, to support its conclusion that this defendant would, in fact, ostensibly present a real threat of danger to others, if armed.").

The Supreme Court's decision in *Rahimi*—which described the circumstances leading to the defendant's domestic violence restraining order in painstaking detail—provides another clear example of a "dangerous" individual. *See United States v. Rahimi,* 602 U.S. 680, 686 (2024) (recounting an incident in which the defendant "assaulted the mother of his young child" and fired shots in her direction as she fled); *id.* at 687 (describing subsequent

instances in which Rahimi assaulted or threatened other people and violated his court-imposed restraining order).

Absent such clear indicia of dangerousness, however, the constitutionality of criminal prosecutions for merely possessing a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1) is inherently suspect. *See Rahimi,* 602 U.S. 680, at 692 (interpreting *Bruen*, 597 U.S. 1, at 22-31).

## III. The statute is unconstitutional as applied to Mr. Booker.

Measured against this framework, neither Mr. Booker himself, nor the conduct at issue in this case satisfies the individualized standard or types of circumstances in which any particular application of 18 U.S.C. § 922(g) can withstand constitutional scrutiny.

### A. Mr. Booker is not inherently dangerous.

As an initial matter, Mr. Booker has never been subjected to the type of individualized "dangerousness" inquiry which *Rahimi* and *Williams* identified as a necessary prerequisite to permanenlty revoking any particular citizen's default constitutional rights under

the Second Amendment. That, standing alone, is sufficient reason to vacate his conviction for "unlawfully" possessing ammunition in violation of 18 U.S.C. 922(g)(1).

Furthermore, no such finding can be sustained on the record before this Court. Mr. Booker's criminal history, as outlined in the PSR [Dkt. 261], mostly reflects prior convictions for non-violent drug offenses and various driving infractions. The offenses outlined therein do not suggest that he has ever injured, or sought to injure another person (either in the course of committing a crime, or otherwise)—and do not tend to indicate that Mr. Booker has any kind of propensity towards violence. Indeed, his most serious prior conviction for "home invasion" stems from an incident which seems to have involved breaking and entering into a private residence at age 22, which did not result in any confrontation, violence, or threat to another person which can be discerned from the record. Aside from that offense, the only other ACCA predicates in Mr. Booker's criminal history are non-violent drug offenses that mostly occurred in his youth.

Based on the foregoing, Mr. Booker's criminal history, while serious, does not place him within the ambit of other offenders whom this Court has deemed to be "dangerous" people. Mr. Booker is not a "dangerous" person as compared to the defendants in cases like *Rahimi, Williams, Bradley* or *Black,* for instance, which all concerned individuals with a demonstrated history of engaging in violent crimes who had, in fact, previously harmed, or sought to harm, others. Unlike the defendants in those cases, Mr. Booker has no prior history of engaging in crimes like murder, attempted murder, robbery, assault, or other weapons-related offenses.

To be sure, Mr. Booker's prior conviction for "home invasion" should not be taken lightly and could ostensibly substantiate a finding that a person is inherently dangerous, under different circumstances. Critically, however, the underlying offense conduct at issue here was not accompanied by findings of firearm use, physical injury, or violent conduct—and should have no bearing on the scope of his constitutional rights under the Second Amendment, well over a decade later.

This case therefore differs markedly from those in which this Court has upheld § 922(g)(1) as applied to individuals with extensive criminal records for violent offenses.

**B. The conduct at issue is not inherently dangerous.**

The conduct giving rise to Mr. Booker's plea and conviction also doesn't qualify as "inherently" dangerous. *Cf. Williams,* 113 F.4th at 663. After all, merely possessing bullets or other ammunition is not uncommon, and certainly not a crime in and of itself. To the contrary, it is protected Second Amendment activity and rather unexceptional in many American households.

Had Mr. Booker possessed a "machine gun" or something significantly more dangerous than a few boxes of bullets, then perhaps the analysis would be different. *See, e.g., United States v. Brown,* 147 F.4th 687 (6th Cir. 2025). Here, however, the plea colliloquy confirms that Mr. Booker's conviction was premised on simply possessing "eight rounds of .45 caliber ammunition." *See* Tr. Plea Hr'g (Jul. 20, 2021), Dkt. 163, Page ID 722 (admitting that he "possessed eight rounds of .45 caliber ammunition," and had previously been convicted of a felony, "at some point prior to that").

In sum, Mr. Booker's conviction rests entirely upon his status as a felon—as opposed to any demonstrated propensity for violence or other indication that his possession of bullets presented a danger to any other person. Under *Williams*, that is not enough.

### C. The nature of the infringement is severe.

The gravity of the infringement also deserves special consideration here, given the severity of penalties faced by Mr. Booker and similarly situated individuals serving lengthy mandatory minimum prison sentences pursuant to 18 U.S.C. § 924(e)(1).

To the extent that *Bruen* and *Rahimi* cast doubt on the constitutionality of certain criminal prosecutions under 18 U.S.C. § 922(g), the subsequent provision which delineates enhanced "penalties" for that offense, 18 U.S.C. § 924(e)(1), must be subjected to the same Second Amendment analysis and scrutiny.

Since neither the Government nor any applicable precedent has sought to identify appropriate historical analogues for that provision, it also stands to reason that 18 U.S.C. § 924(e)(1) is unconstitutional, both on its face and as applied to Mr. Booker.

## CONCLUSION

For these reasons, Mr. Booker's criminal conviction for possessing ammunition must be vacated, and the case should be remanded for resentencing before the district court. In the alternative, if the Court is not inclined to vacate his conviction on the present record, the case should be remanded with instructions for the district court to adjudicate Mr. Booker's as applied challenge in the first instance, in light of *Williams,* 113 F.4th at 658.

Respectfully submitted,

By:    */s/ Agatha M. Cole*
         Agatha M. Cole
         BEVERLY PLLC
         43 West 43rd Street, Suite 159
         New York, NY 10036
         (828) 773-2628
         agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the typeface and the type-style requirements of Fed. R. App. P. 32, because it has been prepared in Century Schoolbook (font size 14) and does not exceed 30-pages in length.

By:     /s/ *Agatha M. Cole*
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*

## CERTIFICATE OF SERVICE

The foregoing brief was served on counsel for all parties via the

court's electronic filing system.

By:     /s/ *Agatha M. Cole*
Agatha M. Cole
BEVERLY PLLC
43 West 43rd Street, Suite 159
New York, NY 10036
(828) 773-2628
agatha@beverlypllc.com

*Counsel for Defendant-Appellant,*
*Mykael Booker*

# ADDENDUM

List of Relevant Docket Entries from District Court Proceedings:

Transcript of Plea Hearing (July 20,2021), at Dkt. 163;

Plea Agreement (March 24, 2022), at Dkt. 209;

Final Presentence Report (March 24, 2022), at Dkt. 261;

Judgment of Conviction (Sept.16, 2022), at Dkt. 292;

Transcript of Sentencing Hearing (Sept.16, 2022), at Dkt.295;

Notice of Appeal (Sept.29, 2022), at Dkt. 300