No. 22-1877

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MYKAEL LEE BOOKER,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court
for the Western District of Michigan
No. 20-cr-00189

———————————————

**BRIEF FOR APPELLEE**

———————————————

TIMOTHY VERHEY
*United States Attorney*

JOHN J. SCHOETTLE
*Assistant United States Attorney*
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................... vi

STATEMENT OF JURISDICTION ................................................... 1

ISSUES PRESENTED ................................................................. 2

STATEMENT OF THE CASE ......................................................... 3

    I.      Factual background ...................................................... 3

    II.     Procedural background ................................................. 4

SUMMARY OF THE ARGUMENT ................................................... 7

ARGUMENT ............................................................................. 8

    I.      Booker's Second Amendment challenge fails ..................... 8

    A.     Standard of review ....................................................... 8

    B.     Legal background ....................................................... 10

    C.     Booker is undoubtedly dangerous. ................................. 13

    D.     Booker's probation status during the offense is another independent basis to disarm him. ...................................... 22

    E.     Booker's mandatory minimum sentence under § 924(e) is irrelevant to the Second Amendment analysis. ..................... 23

CONCLUSION ........................................................................ 25

CERTIFICATE OF SERVICE ...................................................... 26

CERTIFICATE OF COMPLIANCE ................................................ 27

i

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................... 10

*Jackson v. City & Cnty. of San Francisco,*
746 F.3d 953, 967 (9th Cir. 2014) .............................................. 10

*Lundgren v. Mitchell,*
440 F.3d 754 (6th Cir. 2006) ....................................................... 9

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) ................................................................... 9, 10

*Smith v. United States,*
508 U.S. 223 (1993) ................................................................. 19

*Taylor v. United States,*
495 U.S. 575 (1990) ................................................................. 16

*United States v. Barrow,*
No. 24-10155, 2025 WL 1984267 (5th Cir. July 17, 2025) ................. 23

*United States v. Berry,*
No. 24-3769, 2025 WL 1082376 (6th Cir. Apr. 10, 2025) ............. 17, 19

*United States v. Craft,*
No. 24-1624, 2025 WL 2888040 (6th Cir. Oct. 10, 2025) .................... 16

*United States v. Crawford,*
No. 23-5429, 2025 WL 3496999 (6th Cir. Dec. 5, 2025) ..................... 21

*United States v. Fordham,*
No. 24-1491, 2025 WL 318229 (6th Cir. Jan. 28, 2025) ..................... 18

*United States v. Gay,*
98 F.4th 843 (7th Cir. 2024) ....................................................... 23

*United States v. Goins*,
 118 F.4th 794 (6th Cir. 2024) ............................................. 18, 19, 22, 23

*United States v. Gore*,
 118 F.4th 808 (6th Cir. 2024) .............................................................22

*United States v. Hazelwood*,
 398 F.3d 792 (6th Cir. 2005).............................................................17

*United States v. Hostettler*,
 No. 24-3403, -- F.4th --, 2026 WL 787913 (6th Cir. Mar. 20, 2026)....22

*United States v. Johnson*,
 95 F.4th 404 (6th Cir. 2024) .................................................................8

*United States v. Johnson*,
 440 F.3d 832 (6th Cir. 2006)................................................................6

*United States v. Knipp*,
 138 F.4th 429 (6th Cir. 2025) .............................................................10

*United States v. Martin*,
 378 F.3d 578 (6th Cir. 2004)...............................................................17

*United States v. Moore*,
 111 F.4th 266 (3d Cir. 2024).............................................................23

*United States v. Nailor*,
 No. 24-1163, 2026 WL 768779 (6th Cir. Mar. 18, 2026) .....................23

*United States v. Oravets*,
 No. 24-3817, 2025 WL 2682632 (6th Cir. Sept. 19, 2025) ...................23

*United States v. Quailes*,
 126 F.4th 215 (3d Cir. 2025)............................................................23

*United States v. Rahimi*,
 602 U.S. 680 (2024) .........................................................................11

*United States v. Risner*,
 129 F.4th 361 (6th Cir. 2025) .............................................................19

*United States v. Rodriguez-Trujillo,*
  84 F. App'x 621 (6th Cir. 2003) ........................................................... 9

*United States v. Rose,*
  522 F.3d 710 (6th Cir. 2008) ............................................................... 8

*United States v. Suggs,*
  No. 24-2059, 2025 WL 2978046 (6th Cir. Oct. 22, 2025) ..................... 19

*United States v. Taylor,*
  165 F.4th 1029 (6th Cir. 2026) ........................................................... 18

*United States v. Terry,*
  83 F.4th 1039 (6th Cir. 2023) ............................................................. 21

*United States v. White,*
  No. 24-2064, 2025 WL 2060869 n.7 (6th Cir. July 23, 2025) .............. 20

*United States v. Wilkes (Wilkes I),*
  78 F.4th 272 (6th Cir. 2023) ................................................................. 5

*United States v. Wilkes,*
  *(Wilkes II)*, 133 F.4th 600 (6th Cir. 2025) .......................................... 5

*United States v. Williams,*
  113 F.4th 637 (6th Cir. 2024) ...................................................... passim

*United States v. Williams,*
  No. 24-1409, 2025 WL 1136326 (6th Cir. Apr. 17, 2025) ............. 14, 17

## Statutes

18 U.S.C. § 922(g)(1) .................................................................... passim

18 U.S.C. § 924(e) ............................................................................ 4, 5

18 U.S.C. § 924(e)(1) ........................................................................... 24

18 U.S.C. § 3231 .................................................................................... 1

28 U.S.C. § 1291 .................................................................................... 1

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

# STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 18 U.S.C. § 3231 because Defendant-Appellant Mykael Lee Booker was charged with federal crimes. On September 16, 2022, the district court entered its judgment of conviction and sentence. (R.292: Jgmt.) Booker filed a notice of appeal on September 28, 2022. (R.300: Not. App.) This Court has appellate jurisdiction to review Booker's convictions under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Was it plain error in violation of the Second Amendment to apply

to Booker the felon-in-possession statute, 18 U.S.C. § 922(g)(1)?

# STATEMENT OF THE CASE

## I. Factual background

Booker was part of a conspiracy to traffic cocaine. (R.261: PSR, PageID.1340–42, 1347.) During the conspiracy, Booker obtained a handgun and talked about shooting or threatening someone who owed a drug debt. (*Id.*, PageID.1342–43.) Booker complained in an intercepted call about a person who "fucked his money up." (*Id.*) Booker commented, "[He] owe me. Beating him ain't [unintelligible]. [He] still walking around." (*Id.*, PageID.1343.) Booker then explained, "I called [him] twice for a week straight. He told me, 'I'll bring it.' . . . Why else would I get the shells?" (*Id.*)

Concerned that Booker was going to murder a drug debtor, investigators began to follow him. (*Id.*) Booker noticed investigators and hid in an apartment for about six hours. (*Id.*) During that time, he made several calls to get rid of the incriminating evidence in the apartment. (*Id.*) He told his mother, "I'm not giving up my guns. I need them." (*Id.*) He also told a woman on the phone, "I got the gun, the shells. I didn't do nothing yet." (*Id.*) While investigators worked to obtain a search warrant, Booker arranged for a woman to retrieve the guns. (*Id.*) When

investigators finally obtained and executed the search warrant, they found Booker inside with cocaine base, drug paraphernalia, an empty pistol box, and ammunition. (*Id.*)

## II.    Procedural background

A federal grand jury ultimately charged Booker with conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine, possessing cocaine and cocaine base with intent to distribute, possessing a firearm in furtherance of drug trafficking, and possessing ammunition as a felon. (R.44: Superseding Ind., PageID.180–84; R.192: 3d Superseding Ind., PageID.862.) Because Booker had three prior drug trafficking convictions, he qualified as an armed career offender and was subject to a 15-year mandatory minimum for possessing the ammunition as a felon. 18 U.S.C. §§ 922(g)(1), 924(e).

Booker ultimately pled guilty to possessing the ammunition as a felon, conspiring to distribute and possess with the intent to distribute cocaine, and possessing cocaine base with the intent to distribute. (R.124: Plea Mins.; R:169: Order; R.212: Plea Mins.; R.261: PSR, PageID.1338, 1340.)

Ahead of sentencing, Booker disputed that his convictions qualified to make him an armed career criminal under 18 U.S.C. § 924(e). At sentencing, the district court overruled that objection. (R.295: Sent. Tr., PageID.2443.) The district court ultimately imposed a 15-year sentence on each count, to run concurrently. (*Id.*, PageID.2461.) The district court entered a written judgment to that effect (R.292: Jgmt.), and Booker appealed (R.300: Not. App.).

On appeal, Booker's counsel filed an unopposed motion to hold the briefing in abeyance pending this Court's decision in *United States v. Wilkes*, No. 22-1436. (Doc. 27.) This Court granted the request and ordered that defense counsel file status reports. (Doc. 28-2.) In *Wilkes*, this Court addressed whether prior Michigan convictions involving cocaine qualified as predicate convictions under the Armed Career Criminal Act. *United States v. Wilkes (Wilkes I)*, 78 F.4th 272, 278, 285 (6th Cir. 2023); *United States v. Wilkes (Wilkes II)*, 133 F.4th 600, 605 (6th Cir. 2025). Following that decision, Booker's counsel moved to

withdraw. (Doc. 58.) This Court granted the motion and appointed new

counsel.[1] (Doc. 59-1.)

---

[1] In his brief, Booker does not challenge his qualification as an armed career criminal, and any argument to that effect is thereby waived. *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

## SUMMARY OF THE ARGUMENT

Booker's Second Amendment challenge to 18 U.S.C. § 922(g)(1) fails. This Court recognizes that Congress can constitutionally disarm those it deems dangerous. Booker has not and cannot overcome the presumption that he is dangerous. Booker's entire criminal record, including drug trafficking and home invasion, demonstrates his dangerousness. This Court has recognized that even a single such instance of that type of dangerous conduct is effectively conclusive of dangerousness. Booker's dangerous behavior continued in this case; he possessed firearms and ammunition while drug trafficking and spoke about using the firearm to settle a drug debt. At that time, Booker was on probation. Consistent with this Court's precedent, that probation status is relevant to his dangerousness. It is also an independently sufficient basis to disarm him.

In the face of ample evidence of dangerousness, Booker has presented no countervailing evidence, and this Court can rely on the undisputed information in the presentence report to find him dangerous and uphold his conviction. The district court committed no error, let alone a plain one. The court's judgment should be affirmed.

# ARGUMENT

## I. Booker's Second Amendment challenge fails.

Booker's Second Amendment challenge to 18 U.S.C. § 922(g)(1)—which prohibited him from possessing firearms and ammunition as a felon—lacks merit. As Booker acknowledges, this Court has held that § 922(g)(1) is facially constitutional. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). The statute is also constitutional as applied to Booker both because he is dangerous, and because it was constitutional to disarm him while he was on probation.

### A. Standard of review

Ordinarily, this Court "review[s] a district court's decision regarding the constitutionality of a statute *de novo*." *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008). But where, as here, a defendant does not raise such a challenge below, this Court reviews for only plain error. *United States v. Johnson*, 95 F.4th 404, 415 (6th Cir. 2024). "An error is plain if it is clear or obvious, rather than subject to reasonable dispute." *Id.* at 416 (internal quotation marks omitted).

Contrary to Booker's suggestion, plain-error review applies even if *Bruen*[2] was decided after he pled guilty. Because *Bruen* was decided before he was sentenced, Booker could have tried to withdraw his plea and move to dismiss the charge on Second Amendment grounds. But he did not.

Booker further argues that "*de novo* review is warranted to prevent manifest injustice." (Br. 10.) But manifest injustice does not supplant review for plain error. *See United States v. Rodriguez-Trujillo*, 84 F. App'x 621, 625 (6th Cir. 2003) ("If [defendant] cites 'manifest injustice' as a legal standard by which this court may vacate his sentence, it is not a basis for vacating his sentence because the proper standard is plain error."). Anyway, plain-error review, itself, functions to prevent such manifest injustice. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.").

---

[2] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

**B.    Legal background**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects the individual "right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). This implicitly includes the right to possess ammunition. *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), abrogated on other grounds by *United States v. Alaniz*, 69 F.4th 1124, 1127–28 (9th Cir. 2023); *see also United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025) (noting case law that Second Amendment protects "necessary corollaries" to keeping and bearing arms).

The Supreme Court later set forth a two-part test for deciding Second Amendment challenges. First, a court asks whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If so, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

That second-step "analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). The challenged regulation need only be "relevantly similar to laws that our tradition is understood to permit," and "[w]hy and how the regulations burden the right are central to this inquiry." *Id.* "[W]hen a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* In other words, the Supreme Court's precedents do not demand "a law trapped in amber"; "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 691–92.

In *Williams*, this Court addressed the constitutionality of § 922(g)(1). At *Bruen*'s first step, *Williams* concluded that the Second Amendment presumptively protected the defendant's conduct. 113 F.4th at 649. *Williams* then proceeded to the second step of the *Bruen* analysis—whether § 922(g)(1)'s "burden is consistent with the principles underpinning our historical tradition of regulating firearms." *Id.* at 650. The Court determined from an extensive review of English and early American history "that governments in England and colonial America

11

long disarmed groups that they deemed to be dangerous." *Id.* at 657. The Court concluded that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* *Williams* thus held that § 922(g)(1) is constitutional on its face and "as it applies to dangerous individuals." *Id.* at 662.

The Court further determined that "when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 661. In the absence of an effective administrative remedy, that determination must be made by the courts: "When a disarmament statute doesn't provide an administrative scheme for individualized exceptions, as-applied challenges provide a mechanism for courts to make individualized dangerousness determinations." *Id.* at 661.

The panel recognized that, consistent with *Heller*, the statute is "presumptively lawful." *Id.* at 663. To overcome that presumption, the defendant has the burden of showing he is not "dangerous." *Id.* "A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a

crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id*. "A more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id*.

"[W]hen considering an individual's dangerousness, courts may evaluate a defendant's entire criminal record—not just the specific felony underlying his section 922(g)(1) prosecution." *Id*. Because the defendant in *Williams* had prior convictions for aggravated (armed) robbery, attempted murder, and possessing a firearm as a felon (during which he "agreed to stash a pistol that was used to murder a police officer"), he was deemed to be "dangerous," and the Court rejected his as-applied challenge to § 922(g)(1). *Id*. at 662. The Court noted that any one of those convictions was sufficient to demonstrate dangerousness. *Id*.

### C. Booker is undoubtedly dangerous.

As this Court has held, § 922(g)(1) is facially constitutional. *Id*. at 657. Section 922(g)(1) is also constitutional as applied to Booker. Booker has not met his burden to show that he is not dangerous.[3]

---

[3] This Court is bound by its holding in *Williams* that each felon must have "an opportunity to make an individualized showing that he himself is not

Booker claims as a threshold matter that his conviction must be vacated because he was not subjected to a dangerousness inquiry prior to his offense. (Br. 20.) His argument finds no support in history or precedent. *Williams* recognized that a court, even on appeal, may determine a defendant's dangerousness based on criminal history and undisputed facts in the presentence report. 113 F.4th at 662. Even remanding to a district court is unnecessary where a defendant is undoubtedly dangerous. *See id.*; *see also United States v. Williams*, No. 24-1409, 2025 WL 1136326, at *5 (6th Cir. Apr. 17, 2025) (collecting cases determining dangerousness on appeal and denying request for remand). The record here demonstrates Booker's dangerousness.

Anyway, *Williams* recognized that a felon like Booker is presumed dangerous, and it is Booker's burden to show he is not dangerous. 113

---

actually dangerous." 113 F.4th at 663. Nevertheless, the government preserves for further review its argument that § 922(g)(1) is constitutional in all its applications because this Nation's historical tradition of firearm regulation supports disarming all felons categorically without the need for further scrutiny in individual cases. In support, the government incorporates herein the reasoning in its petition for certiorari in *Garland v. Range* (U.S. No. 23-374); its post-*Rahimi* Supplemental Brief in *Range v. Attorney General of the United States* (3d Cir. No. 21-2835); and its post-*Rahimi* Supplemental En Banc Brief in *United States v. Duarte* (9th Cir. No. 22-50048) (Dkt. 109).

F.4th at 657. Thus, even if such a dangerousness inquiry were required, it was incumbent upon him to seek relief from his firearm dispossession. Yet Booker has provided no evidence he ever did that through either a declaratory judgment or other means.

Booker's "specific characteristics," including his "entire criminal history," show that he is dangerous. *Id.* Booker's criminal history provides ample evidence of his dangerousness. Booker has at least four convictions in *Williams*'s second category of crimes, crimes that "inherently pose[ ] a significant threat of danger." *Id.* at 659, 663. As this Court instructed, a defendant with such even one such prior conviction will have "a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663.

"Drug trafficking" is a "prime example" of a crime that puts others at risk. *Id.* at 659. Booker has a history of drug trafficking, which this Court has explained "justif[ies] a finding of danger." *Id.* In 2007, he received 18 months' probation under the Holmes Youthful Trainee Act (HYTA) for delivery/manufacturing of a controlled substance. (R.261: PSR, PageID.1352.) His HYTA status was ultimately revoked, and he was convicted in 2008. (*Id.*) In 2008, he was also convicted in Michigan

15

state court for delivery/manufacturing of a controlled substance. (*Id.*) Again, in 2018, he was convicted of the same trafficking offense in Michigan state court. (*Id.*, PageID.1355.) These offenses establish Booker's dangerousness. *Williams*, 113 F.4th at 663.

Booker also has a 2011 conviction for Home Invasion in Michigan state court. (R.261: PSR, PageID.1354.) "[S]econd-degree home invasion under Michigan law is the equivalent of . . . burglary of a dwelling." *United States v. Craft*, No. 24-1624, 2025 WL 2888040, at *2 (6th Cir. Oct. 10, 2025) (internal quotation marks omitted). "[B]urglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and occupant.'" *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)). Thus, Booker's "conviction for second-degree home invasion makes it 'very difficult' for [him] to 'show[] he is not dangerous.'" *Craft*, 2025 WL 2888040 at *2 (quoting *Williams*, 113 F.4th at 663).

In short, Booker's home invasion and repeated drug trafficking "put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659. Any one of Booker's convictions in *Williams*'s second category would suffice to show he is dangerous.

Booker's conduct underlying his other convictions was also dangerous. Booker has a prior controlled substance offense in which he engaged in dangerous conduct. (R.261: PSR, PageID.1356.) There, Booker accelerated from officers during a traffic stop and caused a chase before he was apprehended. Such conduct puts others in danger and "can properly be considered as falling into the second category of offenses that may make a person dangerous under *Erick Williams*." *Williams*, 2025 WL 1136326 at *3. Indeed, this Court has recognized, for example, that leading officers on a high-speed chase supports a Sentencing Guidelines enhancement for reckless endangerment. *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005) (collecting cases). Similarly, it has recognized that "fleeing and eluding an officer while in a car generally will present serious *potential* risks of physical injury to third parties." *United States v. Martin*, 378 F.3d 578, 583 (6th Cir. 2004) (emphasis original).

Moreover, Booker's multiple other convictions and infractions, pattern of violating court orders, failing to appear, and violating his probation terms only further supports the dangerousness finding. *See United States v. Berry*, No. 24-3769, 2025 WL 1082376, at *1 (6th Cir.

17

Apr. 10, 2025) (finding defendant dangerous in part because defendant's multiple convictions, previous absconding, and violation of pretrial orders "show[ed] a disregard for the law").

Booker's criminal history thus shows a "pattern of dangerous conduct." *United States v. Goins*, 118 F.4th 794, 805 (6th Cir. 2024). Booker's pattern of dangerous conduct not only continued but intensified in this case. *See United States v. Taylor*, 165 F.4th 1029, 1035 (6th Cir. 2026) (looking to a defendant's offense conduct to determine dangerousness); *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) (same). Booker possessed guns and ammunition while engaged in a drug trafficking conspiracy. Indeed, he received and did not object to an enhancement for possessing a firearm or ammunition in connection with drug trafficking. (R.261: PSR, PageID.1351, 1368; R.295: Sent. Tr., PageID.2423.)

Booker made clear his intentions to use that gun to further drug trafficking. Investigators heard him say over a wire that he got "shells" to settle a drug debt and after he noticed investigators, he told someone that he had not done anything with "the gun" or "shells . . . yet." (R.261: PSR, PageID.1342–43.) Possessing a firearm and ammunition to promote

18

drug trafficking is certainly dangerous. *United States v. Suggs*, No. 24-2059, 2025 WL 2978046, at *3 (6th Cir. Oct. 22, 2025) ("[D]rugs and guns are a dangerous combination." (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993))); *see also United States v. Risner*, 129 F.4th 361, 369 (6th Cir. 2025) (holding statute criminalizing the use of a firearm in furtherance of a drug trafficking crime is facially constitutional due to the inherent dangerousness of drugs and firearms).

Booker's probation status during this offense further supports the dangerousness determination. *See Goins*, 118 F.4th at 797 n.2 (explaining that a defendant's "probation goes straight to his dangerousness with respect to his applied challenge"). In *Goins*, this Court held that it was constitutional to disarm a felon who was on a "relatively short probation sentence for a dangerous crime," who violated a condition of that probation that prohibited him from possessing a firearm, and whose history—namely drunk driving—demonstrated a likelihood of future dangerousness. *Id.* at 797; *see also Berry*, 2025 WL 1082376 at *1 (finding defendant dangerous in part because defendant was on probation for a dangerous crime). Like the defendant in *Goins*, Booker was on a relatively short probation sentence for a serious crime

19

(drug trafficking). And like in *Goins*, Booker's pattern of law violations and dangerous conduct—including drug trafficking and fleeing from law enforcement—also demonstrates a strong likelihood of future dangerousness.

Booker's dangerousness is obvious. Congress permissibly disarmed him consistently with the historical tradition identified in *Williams*. Booker offers no countervailing evidence on appeal. Instead, he attempts to minimize the seriousness of his criminal history.

He asserts that the conduct underlying his prior convictions did not involve violence. Even if that were true, it would be of no help to him. This Court has rejected similar arguments before and pointed out that a defendant's conduct may be dangerous by "put[ting] the public's safety at risk." *United States v. White*, No. 24-2064, 2025 WL 2060869, at *4 n.7 (6th Cir. July 23, 2025) (collecting cases). *Williams*, itself, recognized that some crimes establish dangerousness even if they "do not always involve an immediate and direct threat of violence." 113 F.4th at 659. Indeed, "a specific instance of drug trafficking does not need to involve violence, or even an immediate threat of violence, to pose a significant threat of

danger." *United States v. Crawford*, No. 23-5429, 2025 WL 3496999, at *2 (6th Cir. Dec. 5, 2025).

Booker points out that other cases finding dangerousness involved individuals with even more serious records. (Br. 22.) Contrary to Booker's suggestion, just because this Court has found others with worse records dangerous does not mean Booker is somehow not dangerous. *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (calling such reasoning "simply a logical fallacy").

Booker also attempts to minimize the seriousness of his criminal history by arguing that some of his convictions are old and were committed "in his youth." (Br. 21.) But even the older convictions committed during relative youth remain probative of his dangerousness, as they reflect a lifelong pattern of dangerous behavior and disregard for the law. *See Crawford*, 2025 WL 3496999 at *2.

\* \* \*

Considering Booker's personal characteristics and entire criminal record, Booker is clearly dangerous, and it did not violate the Second Amendment to prohibit his firearm possession. Booker has not shown plain error.

**D. Booker's probation status during the offense is an independently sufficient basis to disarm him.**

Separately from his dangerousness, it was also constitutional to disarm Booker at the time of his offense because he was on probation. *Goins* noted that "controlling precedent in this circuit[ ] also supports the temporary disarmament of those on probation, parole, or supervised release"—at least for serious crimes like felonies. 118 F.4th at 802 (citing *United States v. Gore*, 118 F.4th 808 (6th Cir. 2024)). The *Goins* majority did not rest its decision on probation status alone. *Id.* Without necessarily foreclosing the issue, this Court has recently suggested that "*Goins* implied that at least some nexus may have to exist between the dangerousness of the crime and the restriction imposed." *United States v. Hostettler*, No. 24-3403, -- F.4th --, 2026 WL 787913, at *4 (6th Cir. Mar. 20, 2026).

But *Goins*'s limitation was at least partially due to the government's failure to argue in its original brief that probation status by itself was sufficient to disarm Goins. *Goins*, 118 F.4th at 797 n.2. There is an independent historical tradition supporting disarming people who are under a criminal sentence, like those on probation. Indeed, the concurring opinion in *Goins* argued that Goins's "conviction for illegal

possession of a firearm may be upheld simply because Goins was on probation at the time of his offense." *Id.* at 805–07 (Bush, J., concurring).

And this Court in unpublished decisions has recognized that parole or probationary status can justify disarmament. *See, e.g., United States v. Oravets*, No. 24-3817, 2025 WL 2682632, at *2 (6th Cir. Sept. 19, 2025); *see also United States v. Nailor*, No. 24-1163, 2026 WL 768779, at *3 (6th Cir. Mar. 18, 2026) (citing *Oravets*). Other courts too have recognized that, consistent with historical practice, individuals still serving a sentence outside of prison may lawfully be disarmed. *See United States v. Moore*, 111 F.4th 266, 271–72 (3d Cir. 2024); *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025); *United States v. Gay*, 98 F.4th 843, 847 (7th Cir. 2024); *United States v. Barrow*, No. 24-10155, 2025 WL 1984267, at *3 (5th Cir. July 17, 2025). The same historical tradition identified in those cases supports § 922(g)(1) prohibiting Booker's firearm possession, at least while he was on probation.

### E. Booker's mandatory minimum sentence under § 924(e) is irrelevant to the Second Amendment analysis.

Booker makes an abbreviated argument that the "nature of the infringement" on his Second Amendment rights is more "severe" because he faced a mandatory minimum of 15 years in prison for his unlawful

possession. (Br. 24 (citing 18 U.S.C. § 924(e)(1)). But his argument confuses two different concepts: (1) the degree to which the right to bear arms is infringed and (2) the penalty for doing so. Section 924(e)(1) provides an enhanced penalty "[i]n the case of a person who violates section 922(g) of this title and has three previous" qualifying felony convictions. But the nature of the infringement is the same: § 922(g)(1) prohibits firearm possession. The infringement on Booker's right to possess the firearm at the time of his offense was no greater simply because he was subjected to an enhanced penalty if caught with a gun or ammunition.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

Dated: April 6, 2026

*/s/ John J. Schoettle*
JOHN J. SCHOETTLE
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, the foregoing document was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that a copy of the foregoing document was mailed on this date to the opposing party if he/she was not registered to receive the document by the Court's electronic filing system.

*/s/ John J. Schoettle*
JOHN J. SCHOETTLE
United States Attorney's Office
Post Office Box 208
Grand Rapids, MI  49501-0208
(616) 456-2404

# CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(a)(7) and (g) of the Federal Rules of Appellate Procedure, the undersigned certifies that this brief complies with the type-volume limitation and contains no more than 13,000 words as provided by Rule 32(a)(7)(B). A word count was made using Office 365 and the brief contains [xxx] words.

TIMOTHY VERHEY
United States Attorney

Dated: April 6, 2026      */s/ John J. Schoettle*
JOHN J. SCHOETTLE
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Entry | Date | Record Entry Number | Page ID Number Range |
|---|---|---|---|
| Docket Sheet (1:20-cr-189) | N/A | N/A | N/A |
| Superseding Indictment | 01/27/2021 | 44 | 180-209 |
| Minutes, Change of Plea | 07/20/2021 | 124 | 499 |
| Order | 09/23/2021 | 169 | 753-4 |
| Third Superseding Indictment | 03/16/2022 | 192 | 860-875 |
| Minutes, Change of Plea | 03/25/2022 | 212 | 1006 |
| Final Presentence Report | 07/15/2022 | 261 | 1329-71 |
| Judgment | 09/16/2022 | 292 | 2403-9 |
| Transcript: Sentencing Date of Hearing: 09/16/2022 | 09/19/2022 | 295 | 2416-66 |
| Notice of Appeal | 09/28/2022 | 300 | 2472 |